## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GREGORY CROWDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 02 C 4126 |
| v. ) | |
| ) | |
| JOHN MAUL, in his official capacity as Chief ) | |
| Executive Director of Cook County Jail; ) | |
| ERNESTO VELASCO, in his individual and ) | |
| official capacities; MARCUS LYLES, in his ) | Hon. Amy St. Eve |
| individual and official capacities; MICHAEL ) | |
| SHEAHAN in his individual and official ) | |
| capacities; DENNIS ANDREWS, in his ) | |
| individual and official capacities; SAUL ) | |
| WEINSTEIN, in his individual and official ) | |
| capacities; HORACE HARDY, in his individual ) | |
| and official capacities; WILLIAM WALKER, in ) | |
| his individual and official capacities; and JOHN ) | |
| DOES 1–10, and JANE DOES 1–5, in their ) | |
| individual and official capacities, ) | |
| ) | |
| Defendants. ) | |

### AMENDED COMPLAINT

Plaintiff Gregory Crowder, by and through his court-appointed counsel appearing <u>pro bono publico</u> in the district court, alleges upon personal knowledge with respect to his own acts and upon information and belief with respect to all other matters, as follows:

### JURISDICTION

1. This federal action arises under 42 U.S.C. § 1983. The Court has jurisdiction of the action, brought to protect Plaintiff's due process right to be free from excessive force and other misconduct by Cook County Jail officials, under 28 U.S.C. §§ 1331(a) and 1343.

2. The Court has supplemental jurisdiction over Plaintiff's state law tort claims for assault, battery and intentional infliction of emotional distress under 28 U.S.C. § 1367.

## THE PARTIES

3. Plaintiff Gregory Crowder is a pretrial detainee confined at the Cook County Department of Corrections (the "Cook County Jail," the "Jail," or "CCDOC"), where he is awaiting trial on criminal charges. Plaintiff is a homosexual.

4. Defendant Director John Maul ("Maul") is the present chief executive director of Cook County Jail. As the chief executive officer of the Jail, he reports directly to Cook County Sheriff Michael F. Sheahan, and is accountable for the direction and coordination of all Cook County Department of Corrections operations. He supervises the Jail's budget, as well as the management of all Jail programs and activities, and directly or indirectly supervises all of its personnel. Maul has responsibility for all policies, practices and procedures for detainees and correctional officers at the Jail, and also for ensuring compliance with the Jail's policies, practices and procedures. Prior to that, Maul was an assistant executive director for CCDOC, with responsibility for the Jail's Internal Operations. He is sued in his official capacity.

5. Defendant Ernesto Velasco ("Velasco") was the chief executive director of the Cook County Jail at all times relevant to the allegations raised in this Amended Complaint. Velasco resigned from his position as chief executive director in December of 2002. At all times relevant to the allegations raised herein, he was the chief executive officer of the Jail, reported directly to Cook County Sheriff Michael F. Sheahan, and was accountable for the direction and coordination of all Cook County Department of Corrections operations. He was also the county official who oversaw all operations at the Jail, and directly or indirectly supervised all of its

personnel. Mr. Velasco had responsibility for all policies, practices and procedures for detainees and correctional officers at the Jail, and also for ensuring compliance with the Jail's policies, practices and procedures. He is sued in his individual and official capacities.

6. Defendant Michael F. Sheahan ("Sheahan") is the Sheriff of Cook County. He is a policy making official of Cook County, with final decisionmaking authority over all policy, practices and procedures for and affecting detainees and Sheriff's Office personnel at the Jail and the Cook County Criminal Courts Building (the "CCB"). He is also responsible for ensuring compliance with Sheriff's Office policies, practices, customs and procedures, and therefore has a duty to monitor the activities that take place at the Jail, to ensure the effectiveness of and compliance with its policies, practices, customs and procedures. He is the principal supervisor of the Jail and the CCB. He is sued in his individual and official capacities.

7. Defendant Dennis Andrews ("Andrews") is Superintendent of Division I at Cook County Jail, and also has responsibility for the Jail's Special Operations Response Team ("SORT"). As Superintendent, he has responsibility for assisting in the formulation, execution and oversight of all policies, practices and procedures for and affecting detainees and correctional officers at the Jail and Division I. He therefore has a duty to monitor the activities that take place at Division I, to ensure the effectiveness of and compliance with the Jail's policies, practices, customs and procedures. At all times relevant to the allegations herein, Defendant Horace Hardy was assigned to Division I, and was therefore under Andrews's supervision and control. Andrews is sued in his individual and official capacities.

8. Defendant Marcus Lyles ("Lyles") is employed as an assistant executive director at Cook County Jail. As an assistant executive director, he has responsibility for the Jail's

Special Units, including Management Information Systems, SORT, the Canine Unit, and Receiving and Booking. He also has responsibility for assisting in the formulation, execution and oversight of all policies, practices and procedures for and affecting detainees and correctional officers at the Jail, and therefore has a duty to monitor the activities that take place at the Jail, to ensure the effectiveness of and compliance with the Jail's policies, practices, customs and procedures. He is sued in his individual and official capacities.

9. Defendant Saul Weinstein ("Weinstein") is employed as the Chief Investigator for the Sheriff's Office Internal Affairs Divisions (the "IAD") for CCDOC. He is responsible for supervising all investigations of alleged misconduct by Sheriff's personnel against detainees at CCDOC, and also for reviewing the findings of fact, conclusions of law, disciplinary recommendations made and evidence gathered in connection with each of CCDOC's IAD investigations. He also has responsibility for the formulation, execution and oversight of all policies, practices and procedures for and affecting these IAD investigations, and therefore has a duty to monitor the IAD investigations to ensure the effectiveness of and compliance with IAD policies, practices, customs and procedures. He is sued in his individual and official capacities.

10. Defendants John Does 1–10, and Jane Does 1–5 (collectively, the "IAD Defendants") whose names are unknown to Plaintiff at this time, are employed as Internal Affairs Division Investigators at and for the Sheriff's Office of Cook County. They are responsible for investigating at CCDOC all allegations of misconduct by Sheriff's personnel against Jail detainees. In connection therewith, the IAD Defendants are obligated to gather and take evidence, to make findings of fact and reach conclusions of law, and also to make disciplinary recommendations with respect to and as a result of their investigations. Each of the final reports prepared by the IAD

Defendants in connection with their investigations is reviewed by their superiors and the other Defendants. The IAD Defendants are sued in their individual and official capacities.

11. At all times relevant to this Amended Complaint, Defendants Horace Hardy ("Hardy") and William Walker ("Walker") were employed as correctional officers at Cook County Jail. At all times relevant to the allegations raised herein, Defendant Walker was assigned to Division 9. Both Hardy and Walker are sued in their individual and official capacities.

12. All Defendants acted under color of state law at all times relevant to the allegations raised herein.

**FACTUAL BACKGROUND**

13. In October of 2000, Plaintiff was arrested on a no bond traffic warrant unrelated to the matters for which he is presently being held for trial, and was subsequently confined to a housing tier located in Division 1 of Cook County Jail. Plaintiff remained in Division 1 for three days, until the court ordered Plaintiff released.

14. During Plaintiff's stay at Division 1, Defendant Hardy was stationed on or near the housing tier where Plaintiff was housed. During this time, Hardy repeatedly conversed with Plaintiff, telling Plaintiff that he wanted to be Plaintiff's mentor in Jesus Christ after Plaintiff's release. On Plaintiff's last day in Jail, Hardy obtained Plaintiff's phone number by falsely stating to Plaintiff that the clothing room had lost Plaintiff's street clothes and needed Plaintiff's home phone number to return his clothing when it was located.

15. The day after Plaintiff was released from the Jail, Defendant Hardy began making telephone calls to Plaintiff's home. Hardy called Plaintiff's home repeatedly for several weeks, and spoke with Plaintiff and Plaintiff's mother in an effort to "get together" with Plaintiff.

Plaintiff did not wish to meet with, nor did he meet with, Hardy. Plaintiff communicated this message to Hardy.

16. On or about May 2, 2001, Plaintiff was arrested and charged with murder and conspiracy to commit murder, the offenses for which he is presently being held. On May 4, 2001, Plaintiff was transferred into the custody of the Cook County Department of Corrections, where he has since been confined as a pretrial detainee. Since Plaintiff's May 4, 2001, confinement, the following events have occurred.

### HARDY'S FIRST THREAT

17. On or about May 4, 2001, at about 7:30 a.m., Plaintiff waited with several other detainees in a Jail holding area known as "the bullpen" for a Cook County Court Services Deputy Sheriff to escort them from the bull pen to the CCB.

18. Detainees are escorted from the Jail's bull pen to the CCB via an inner tunnel adjacent to Division 1 at the Cook County Jail. At that time, construction work was being performed in the tunnel, lighting conditions were poor, and plastic sheeting was draped from the ceiling and pipes.

19. Defendant Hardy arrived at the bull pen and approached the Court Services Deputy Sheriff who was preparing to transport Plaintiff and other detainees to the CCB. Hardy told the Deputy Sheriff that he, Hardy, would personally escort Plaintiff to the CCB. The Deputy Sheriff agreed, and escorted the other detainees to the CCB, leaving Plaintiff behind in the bull pen.

20. A short time later, Defendant Hardy escorted Plaintiff through the tunnel towards the CCB. While the two were in the tunnel, Hardy demanded a payment of $1,000 for protection from others at the Jail, and told Plaintiff that his life would be in danger if he didn't pay.

6

21. Defendant Hardy handed Plaintiff a slip of paper on which he had written down a cell phone number and a post office box. Hardy told Plaintiff that he, Hardy, could be contacted at or through the telephone number, and that Plaintiff should arrange to have the protection money sent to the post office box address.

22. As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, mental anguish, fright, shock, psychological injury and apprehension of imminent physical harm.

23. Defendant Hardy's actions were done intentionally, maliciously, sadistically, and without provocation or consent.

## THE FIRST ATTACK

24. On or about May 28, 2001, at about 7:30 a.m., Plaintiff once again waited with several other detainees in the Jail's bullpen for a Cook County Court Services Deputy Sheriff to escort them from the bull pen to the CCB.

25. Defendant Hardy again arrived at the bull pen and approached the Court Services Deputy Sheriff who was preparing to transport Plaintiff and other detainees to the CCB. Once again, Hardy told the Deputy Sheriff that he, Hardy, would personally escort Plaintiff to the CCB. The Deputy Sheriff agreed, and escorted the other detainees to the CCB, leaving Plaintiff behind in the bull pen.

26. A short time later, Defendant Hardy escorted Plaintiff through the tunnel towards the CCB. While in the tunnel, and without provocation, Hardy punched Plaintiff several times, and forced Plaintiff behind plastic sheeting draped in the tunnel, where Hardy and Plaintiff were somewhat hidden from view. Hardy punched Plaintiff several more times.

7

27. Defendant Hardy demanded $50,000 in protection money from Plaintiff, and threatened Plaintiff that unless he paid Hardy the protection money, Plaintiff and his family would be killed.

28. Defendant Hardy then grabbed Plaintiff's buttocks and penis.

29. Defendant Hardy pulled down Plaintiff's pants.

30. Defendant Hardy repeatedly tried to ram his penis into Plaintiff's anus.

31. Defendant Hardy sodomized Plaintiff with his fingers and a flashlight.

32. Defendant Hardy then beat Plaintiff again.

33. During the course of the actions described above, Plaintiff called for help and insisted that Defendant Hardy stop.

34. As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock, humiliation, psychological injury, embarrassment, mortification, future pain and suffering, and apprehension of imminent physical harm.

35. Defendant Hardy's actions were done intentionally, maliciously, sadistically, and without provocation or consent.

## HARDY'S THREATENING LETTER

36. Approximately one to two weeks after the events described in Paragraphs 24 through 35, Plaintiff received from Defendant Hardy a letter demanding $100,000 in protection money. In the letter, Hardy threatened to kill Plaintiff if he did not pay the protection money.

37.     As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, mental anguish, fright, shock, psychological injury and apprehension of imminent physical harm.

38.     Defendant Hardy's actions were done intentionally, maliciously, sadistically, and without provocation or consent.

## THE SECOND ATTACK

39.     On or about June 11, 2001, at about 5:30 p.m., Defendant Walker ordered Plaintiff, who was then in the Division 9 common day-room, to come into the officer's station of housing tier 2-D, Division 9, of the Cook County Jail. Plaintiff followed Walker's orders.

40.     In the hallway outside the officer's station, Defendant Walker told Plaintiff that his life was in danger if he did not cooperate, and demanded money from Plaintiff for protection. Walker then forced Plaintiff into the officer's station.

41.     Inside the station office, and without provocation or warning, Walker repeatedly punched Plaintiff, who fell to the floor as a result of the punches. Walker repeatedly kicked Plaintiff, and Defendant Walker again told Plaintiff his life was in danger if he did not cooperate, and demanded money from Plaintiff for protection.

42.     Defendant Walker demanded that Plaintiff engage in sexual acts with him, and physically forced Plaintiff to perform oral sex on him.

43.     As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock, humiliation, psychological injury, embarrassment, mortification, future pain and suffering, and apprehension of imminent physical harm.

44. Defendant Walker's actions and threats were done intentionally, maliciously, sadistically, and without provocation or consent.

## THE THIRD ATTACK

45. On or about June 18, 2001, at about 5:30 p.m. on tier 2-D, Division 9, of the Cook County Jail, Defendant Walker forced Plaintiff into a storage room used to store detainee street clothing. This room is referred to as "the Closet."

46. Once inside the Closet, and without provocation or warning, Defendant Walker punched Plaintiff several times, knocking him to the floor, and then repeatedly kicked Plaintiff.

47. In the Closet, Defendant Walker again told Plaintiff his life was in danger if he did not cooperate, and again demanded money from Plaintiff for protection.

48. Once again, Walker demanded that Plaintiff engage in sexual acts with him, and physically forced Plaintiff to perform oral sex on him.

49. As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock, humiliation, psychological injury, embarrassment, mortification, future pain and suffering, and apprehension of imminent physical harm.

50. Defendant Walker's actions and threats were done intentionally, maliciously, sadistically, and without provocation or consent.

## THE FOURTH ATTACK

51. On or about June 19, 2001, at about 5:30 p.m. on tier 2-D, Division 9, of the Cook County Jail, Defendant Walker handcuffed Plaintiff and forced Plaintiff into the same storage room as that described above in Paragraph 45.

52. In the Closet, Defendant Walker repeatedly punched Plaintiff, knocking him to the floor, and then kicked Plaintiff several times.

53. Once again, Defendant Walker told Plaintiff his life was in danger if he did not cooperate, and demanded money from Plaintiff for protection.

54. Walker demanded that Plaintiff engage in sexual acts with him, and squeezed Plaintiff's penis and testicles repeatedly, causing Plaintiff to cry out in pain.

55. Defendant Walker pulled down his own pants, and pulled down Plaintiff's pants.

56. Defendant Walker forced Plaintiff to kiss him.

57. Defendant Walker licked Plaintiff on his genitals, anus, and feet.

58. Defendant Walker physically forced Plaintiff to perform oral sex on him and physically forced Plaintiff to swallow Walker's sperm.

59. Defendant Walker then urinated on Plaintiff.

60. Defendant Walker's actions and threats were done intentionally, maliciously, sadistically, and without provocation or consent.

61. As a direct and proximate result of Defendant Hardy's conduct, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock,

11

humiliation, psychological injury, embarrassment, mortification, future pain and suffering, and apprehension of imminent physical harm.

## FAILURE TO CONTROL

62. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

63. Defendants Hardy and Walker have repeatedly engaged in excessive force against Jail detainees in the past. These incidents are the subject of IAD investigative reports, which are compiled and maintained by the Jail, and are organized and grouped according the last name of the individual correctional officer named as the subject of the investigation.

64. Defendants Sheahan, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants were placed on notice of the abusive conduct of Defendants Hardy and Walker by a number of letters, complaints and grievances sent, or telephone calls made, to them by Plaintiff and his family, but failed to take timely disciplinary action against Defendants Hardy and Walker, or otherwise to control the misconduct of Defendants Hardy and Walker.

65. Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants had a duty to take disciplinary action against or otherwise control the abusive behavior of Defendants Hardy and Walker. Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants failed to act, however, even though they knew that there was an actual and excessive risk of harm to Jail detainees, that Jail detainees were suffering from excessive force at the hands of Defendants Hardy and Walker, and even though it was obvious to these Defendants that Defendants Hardy and Walker would continue to use excessive force on Jail detainees.

12

66. By failing to take disciplinary action against Defendants Hardy and Walker or otherwise to control their behavior, Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants created an environment in which future beatings were inevitable. Were it not for these Defendants' deliberate indifference to Plaintiff's right to be free from the use of excessive force, the conduct of Defendants Hardy and Walker, described above, would never have taken place.

67. As a direct and proximate result of the above actions and inactions of Defendants Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock, humiliation, psychological injury, embarrassment, mortification and future pain and suffering.

### PERVASIVE RISK, UNCONSTITUTIONAL POLICIES

68. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

69. Prior to the assaults and beatings described above in Paragraphs 17 through 61 above, and over a period of years, many thousands of detainees at Cook County Jail were subjected to the unconstitutional misuse of force and were beaten by Jail correctional officers. Over a period of many months prior to the attacks described above, many hundreds of inmate beatings by the Jail's correctional officers were officially reported in written complaints and grievances by the Jail's detainees to Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants, who deliberately and maliciously failed to investigate, otherwise covered up, or turned a blind eye towards and ignored, the aforementioned beatings and other problems.

70. Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants are aware that there is a pervasive and excessive risk of harm to detainees, and that detainees are and will continue to be subjected to the unconstitutional misuse of force by correctional officers at the Cook County Jail. Nevertheless, these Defendants are deliberately and maliciously failing to exercise proper supervision or direction to remedy this known violence problem, or are turning a blind eye towards this problem and ignoring it, despite their knowledge.

71. It is the policy, practice, and procedure of Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants to condone and approve the excessive and unconstitutional misuse of force by correctional officers on detainees at Cook County Jail; to fail to properly investigate allegations of misconduct against detainees; to stall investigations; and at the same time, to cover up the many beatings of detainees at Cook County Jail. These policies, practices, customs and procedures of Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants, whether or not written down, are so permanent, persistent, widespread, longstanding, deeply embedded and well-settled within Cook County Jail as to have the force of law.

72. Defendant Sheahan, who has final policy making authority over jail conditions for detainees at Cook County Jail, has knowledge that Jail detainees, specifically including Plaintiff, face a pervasive risk of harm and of being beaten by correctional officers.

73. Defendant Sheahan has knowledge that his subordinates, including Defendants Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants, are not going to remedy, nor are they going to take any action to remedy, the pervasive risk of harm to detainees in the Cook County Jail of being beaten by correctional officers, and Defendant Sheahan is deliberately

14

failing to remedy, or to exercise his proper supervisory authority or direction to remedy, this known violence problem.

74. Defendants Sheahan, Maul, Velasco and Lyles encouraged, directed, ratified, and knowingly acquiesced in the acts and omissions of Defendants Andrews, Weinstein and the IAD Defendants, thereby creating an environment in which the attacks on Plaintiff described above were inevitable. All of these acts and omissions created an environment in which Defendants Hardy and Walker knew that their subsequent beatings of Plaintiff would be condoned and encouraged and would, if need be, covered up; or that those responsible for investigating and correcting the problems would turn a blind eye towards them and ignore them.

75. At all times relevant to the allegations raised herein, all Defendants were acting within the scope of their employment and pursuant to the policies, practices and procedures of the Cook County Department of Corrections.

76. The attacks on Plaintiff described above were a direct and proximate result of the actions, inactions, omissions, policies, practices and procedures of Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants described above.

77. As a direct and proximate result of the above-described acts and omissions of Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants, Plaintiff suffered violations of his Constitutional rights, pain and suffering, mental anguish, fright, shock, humiliation, psychological injury, embarrassment, mortification, and future pain and suffering.

## COUNT I: ASSAULT
### (Against Defendants Hardy and Walker)

78. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

79. As set forth above, Plaintiff alleges that Defendants Hardy and Walker tortiously assaulted him, and inflicted injuries as set forth herein.

## COUNT II: BATTERY
### (Against Defendants Hardy and Walker)

80. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

81. As set forth above, Plaintiff alleges that Defendants Hardy and Walker tortiously battered him, and inflicted injuries as set forth herein.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants Hardy and Walker)

82. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

83. As set forth above, Plaintiff alleges that Defendants Hardy and Walker committed the tort of intentional infliction of emotional distress against him, and inflicted injuries as set forth herein.

## COUNT IV: FAILURE TO CONTROL
### (Against Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants)

84. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

85. As set forth above, Plaintiff alleges that Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants failed to timely intervene, halt or otherwise control the conduct of Defendants Hardy and Walker described or referred to herein. Defendants thereby violated Plaintiff's due process rights to be free from excessive force and other misconduct, and inflicted injuries on Plaintiff, as set forth herein.

## COUNT V: UNCONSTITUTIONAL ACTS AND POLICIES
### (Against All Defendants)

86. Plaintiff hereby incorporates by reference each of the preceding paragraphs, and realleges them as if they were fully set forth herein.

87. As set forth above, Plaintiff alleges that Defendants Hardy and Walker used excessive force; and that Defendants Sheahan, Maul, Velasco, Lyles, Andrews, Weinstein and the IAD Defendants encouraged, directed, ratified, or knowingly acquiesced in each others' actions and omissions, deliberately encouraging the misuse of force on detainees in the jail, and deliberately creating an environment in which the attacks on Plaintiff described above were inevitable. Further, the acts and omissions described herein created an environment in which Defendants Hardy and Walker knew that their misconduct towards Plaintiff would be condoned and encouraged and would, if necessary, be covered up.

88. Defendants also turned a blind eye towards the use of excessive force by Sheriff's Office personnel at CCDOC, failed to exercise proper supervision or direction to identify, remedy and halt the aforementioned problems and perpetrators, and failed to conduct proper investigations of these problems and incidents at Cook County Jail, all as part of the policies, practices, customs and procedures as set forth and described herein.

89. As a result, Defendants violated Plaintiff's due process rights to be free from excessive force and other misconduct, and inflicted injuries on Plaintiff, as set forth herein.

## **RELIEF**

WHEREFORE, Plaintiff GREGORY CROWDER demands judgment against all Defendants, and further requests that the Court enter relief as follows:

(a) Award Plaintiff compensatory damages in the amount of $100,000 against all Defendants, jointly and severally;

(b) Award Plaintiff punitive damages in the amount of $100,000 against each of those Defendants who are sued in their individual capacities;

(c) Enter an injunction directing that Defendants properly and effectively investigate and take disciplinary action against all Sheriff's Office personnel known to pose an excessive risk of serious harm to the detainees with whom they come into contact, including, as necessary, the development and implementation of supplemental programs and procedures; and

(d) Grant such other relief as justice and equity require, and to which Plaintiff is entitled.

Dated: July 16, 2003
Chicago, Illinois

Respectfully submitted,

Frances Kao
Francis Neil MacDonald
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
(312) 407-0411 (fax)

Court-Appointed Attorneys for
*Plaintiff Gregory Crowder*